**KRONENBERGER ROSENFELD, LLP**
Jeffrey M. Rosenfeld (Bar No. 222187)
Leah Rosa Vulić (Bar No. 343520)
300 Spectrum Center Drive, Ste 400
Irvine, CA 92618
Telephone: (949) 374-5036
Facsimile: (949) 5056
jeff@kr.law
leah@kr.law

**RM WARNER, PLC**
Raeesabbas Mohamed, Esq. (*pro hac vice* forthcoming)
8283 N. Hayden Road, Ste 229
Scottsdale, AZ 85258
raees@rmwarnerlaw.com
Telephone: (480) 331-9397
Facsimile: (866) 961-4984

Attorneys for Plaintiff Skylar Lempinen

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **SKYLAR LEMPINEN**, an individual, Plaintiff, v. **COOKIE PLUG EAST, LLC**, a California limited liability company; **BMF BRANDS LLC**, a Nevada limited liability company; **BIE BRANDS LLC**, a California limited liability (fka The Cookie Plug Group LLC); **ERIK MARTINEZ**, an individual; **CHRIS WYLAND**, an individual; **DAWNA WYLAND**, an individual; **RYAN USREY**, and individual; and **TIFFANY USREY**, an individual, Defendants. | Case No. **COMPLAINT** **DEMAND FOR JURY TRIAL** |

1   Plaintiff Skylar Lempinen ("Mr. Lempinen" or "Plaintiff"), by and through
2   his undersigned counsel, hereby brings this action against Cookie Plug East,
3   LLC, BMF Brands LLC, BIE Brands LLC, and Cookie Plug East, LLC
4   (collectively, "Cookie Plug"); individuals Erik Martinez and Lauren Martinez
5   (together, "Defendant Martinez"); individuals Chris Wyland and Dawna
6   Wyland (together, "Defendant Wyland"); and Ryan Usrey and Tiffany Usrey
7   (together, "Defendant Usrey") (all collectively referred to as "Defendants") and
8   alleges as follows:

9   **INTRODUCTION**

10   1.    This action arises from Defendants' calculated and fraudulent
11   scheme to sell a failing and unsupported franchise model to unsuspecting
12   entrepreneurs.

13   2.    Plaintiff Skylar Lempinen, a military veteran and small business
14   owner based in Arizona, was induced to invest $130,500.00 in franchise
15   development fees and to open a Cookie Plug location based on materially
16   false representations, selective disclosures, and unlawful concealment by
17   Defendants.

18   3.    At every stage of the relationship, Defendants acted with
19   deception, bad faith, and disregard for their legal obligations under franchise
20   law.

21   4.    Defendants presented inflated revenue numbers from 2021,
22   withheld critical performance declines and widespread franchise failures, and
23   concealed the litigation history of their key executive, all in violation of the
24   Federal Franchise Rule and Arizona consumer protection law.

25   5.    In reliance on those misrepresentations and omissions, Plaintiff
26   signed an Area Development Agreement ("ADA") for seven stores, built out
27   and launched his first location, and invested hundreds of thousands of dollars.

28   6.    When the business struggled due to operational issues and lack

KRONENBERGER ROSENFELD

of support, Defendants retaliated by cutting off access to essential product, refusing to resolve payment disruptions, and severing corporate communications, ultimately sabotaging Plaintiff's ability to recover or expand.

7. This is not an isolated incident. A prior arbitration award against Cookie Plug found nearly identical conduct, including fraud in the inducement, wrongful termination, and willful concealment of material litigation, and awarded substantial damages to the aggrieved franchisee. The same executives, the same misrepresentations, and the same misconduct are present here.

8. Plaintiff brings this action to rescind the ADA, recover his deposits and investment, and hold Defendants accountable for their fraudulent, retaliatory, and unlawful actions.

9. Plaintiff seeks compensatory and punitive damages, restitution, attorney's fees, and such other relief as justice may require.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Skylar Lempinen is a resident of Arizona, all Plaintiffs' LLC members are residents of Arizona, and Cookie Plug and all its LLC members are residents of California.

11. Venue is proper in this Court under the ADA, which requires that any disputes be brought in the Federal District Court closest to Riverside County, California.

12. Defendants irrevocably submit to the jurisdiction and venue of this Court pursuant to the ADA.

**PARTIES**

13. Plaintiff Skylar Lempinen is an individual domiciled in Arizona.

14.    Defendant Cookie Plug East, LLC is a California limited liability company with its members domiciled in California. Upon information and belief, Cookie Plug East, LLC is one of the primary entities through which the Cookie Plug franchise system was operated, promoted, and sold. Cookie Plug East, LLC participated in the franchise relationship with Plaintiff and materially benefited from Plaintiff's investment and performance since it received Plaintiff's wire transfer. Plaintiff alleges that Cookie Plug East, LLC acted in concert with the other named Defendants and is jointly and severally liable for the misconduct alleged herein.

15.    Defendant BMF Brands LLC is a Nevada limited liability company. At all relevant times, BMF Brands LLC was managed by Defendants Erik Martinez and Chris Wyland and functioned as an affiliated entity within the Cookie Plug franchise enterprise. Upon information and belief, BMF Brands LLC participated in the offer, marketing, and sale of franchise rights to Plaintiff and materially benefited from Plaintiff's franchise investment. BMF Brands LLC is therefore jointly and severally liable for the misconduct alleged herein.

16.    Defendant BIE Brands LLC is a California limited liability company and the legal successor to The Cookie Plug Group LLC, the entity listed as franchisor in the ADA signed by Plaintiff. BIE Brands LLC was directly involved in the solicitation, negotiation, and execution of the ADA and served as the franchisor or controlling affiliate at the time of Plaintiff's investment. BIE Brands LLC is liable for all contract-based and tort-based claims arising out of the conduct described herein.

17.    Defendant Erik Martinez is an individual domiciled in California and the founder of the Cookie Plug franchise brand. Plaintiff alleges that Defendant Martinez personally directed, orchestrated, or ratified the conduct giving rise to the claims in this action, including the use of inflated financial data, concealment of material facts, retaliation against Plaintiff, and

1   interference with franchise operations. Defendant Martinez is sued in his
2   individual capacity for his role in the fraudulent inducement, operational
3   sabotage, and unlawful acts described herein.

4       18.   Defendant Lauren Martinez is Defendant Martinez's wife, and
5   Defendant Martinez was acting for and on behalf of the community at all
6   relevant times alleged herein.

7       19.   Defendant Chris Wyland is an individual domiciled in California
8   who, at all relevant times, served as a managing member, CDO, or CEO
9   within the Cookie Plug franchise enterprise. Defendant Wyland personally
10  signed the ADA with Plaintiff and participated directly in the franchise sale.
11  Plaintiff alleges that Defendant Wyland failed to disclose material litigation
12  history and regulatory actions, and that his omissions and misrepresentations
13  were central to the fraudulent inducement and statutory violations alleged
14  herein. Defendant Wyland is sued in his individual capacity for his personal
15  role in the unlawful conduct.

16      20.   Defendant Dawna Wyland is Defendant Wyland's wife, and
17  Defendant Wyland was acting for and on behalf of the community at all
18  relevant times alleged herein.

19      21.   Defendant Ryan Usrey is an individual domiciled in California.
20  Upon information and belief, Defendant Usrey served as the franchise seller
21  or broker who facilitated the sale of the Cookie Plug franchise to Plaintiff.
22  Defendant Usrey's name appears on the Franchise Disclosure Document
23  receipt submitted to Plaintiff as the individual who offered and facilitated the
24  sale. Plaintiff alleges that Defendant Usrey, as CEO at the time of the ADA,
25  participated personally in the misrepresentations and omissions that induced
26  Plaintiff into the ADA and is individually liable for fraud and violations of
27  consumer protection laws.

28      22.   Defendant Tiffany Usrey is Defendant Usrey's wife, and

1   Defendant Usrey was acting for and on behalf of the community at all relevant

2   times alleged herein.

3       23.   Defendants Lauren Martinez, Dawna Wyland, and Tiffany Usrey

4   are named in their capacity as spouses of Defendants in order to preserve

5   Plaintiff's ability to satisfy any judgment from community property under

6   California Family Code §§910 and 1000.

7   **FACTUAL ALLEGATIONS**

8       24.   Plaintiff Skylar Lempinen is a military veteran and Arizona

9   entrepreneur who, in 2023, sought to open a franchised dessert business

10  under the brand "The Cookie Plug."

11      25.   The Cookie Plug, through its agents and executives, including

12  CDO turned CEO Chris Wyland, Founder Erik Martinez, and former CEO

13  Ryan Usrey, actively recruited Mr. Lempinen as a multi-unit franchisee.

14      26.   Defendant Wyland presented Mr. Lempinen with an Area

15  Development Agreement ("ADA") for seven franchise locations and was

16  induced to invest $130,500.00 in franchise deposits based on

17  misrepresentations of financial strength, profitability, and operational support.

18      27.   Defendants represented, through marketing materials and

19  emails, that the Anaheim Cookie Plug location had net sales exceeding

20  $826,000 in 2021.

21      28.   Defendants failed to disclose that by 2023, that same location's

22  net sales had plummeted to approximately $419,000, a nearly 50% decline.

23      29.   The financial information provided to Mr. Lempinen was

24  selectively curated and materially misleading.

25      30.   Defendants failed to provide an accurate and complete Franchise

26  Disclosure Document ("FDD") in violation of federal franchise law.

27      31.   Instead, Mr. Lempinen was sent a generic template of the FDD

28  with a blank, unsigned Franchise Agreement buried within hundreds of

KRONENBERGER ROSENFELD

1   pages.

2      32.    Mr. Lempinen never received a fully executed Franchise

3   Agreement, nor was he afforded the mandatory 14-day review period under

4   franchise regulations.

5      33.    Defendants pressured Mr. Lempinen into signing the ADA

6   quickly, relying on representations that it was a "hot" franchise opportunity

7   likely to be oversubscribed.

8      34.    Defendants misrepresented the nature of the support they would

9   provide to franchisees, including product sourcing, marketing, and

10  operational guidance.

11     35.    Relying on Defendants' false claims and omissions, Mr.

12  Lempinen invested heavily in his first location, which opened in 2023.

13     36.    From inception, the store was plagued by unanticipated and

14  exorbitant operational costs and systemic franchisor negligence.

15     37.    Despite repeated requests, Defendants failed to provide

16  meaningful support to stabilize or improve the struggling store.

17     38.    The store lost between $7,000.00 and $10,000.00 per month,

18  despite Mr. Lempinen's efforts to cut costs and implement mitigation

19  strategies.

20     39.    Without justification, Defendant Martinez abruptly cut off Mr.

21  Lempinen's access to proprietary cookie dough, the essential input for the

22  business.

23     40.    Defendant Martinez falsely claimed that this cutoff was due to

24  "non-compliance," despite full awareness of the operational hardships and

25  Mr. Lempinen's attempts to remain in compliance.

26     41.    In order to keep the store afloat, Mr. Lempinen temporarily

27  sourced comparable dough products while attempting to resolve the issue

28  with Defendants.

42.    Rather than support the franchisee, Defendant Martinez sent a cease-and-desist letter threatening legal action over the temporary dough substitution.

43.    These actions rendered Mr. Lempinen unable to operate, effectively sabotaging the store's viability.

44.    During this period, Mr. Lempinen made repeated good-faith efforts to process his royalty payments via ACH, but was thwarted by undisclosed issues with Cookie Plug's third-party payment processor, Payco.

45.    Defendants refused to cooperate to resolve these payment issues, even though Payco's internal personnel had ties to the Cookie Plug brand and may have had conflicting interests.

46.    Mr. Lempinen issued a litigation preservation letter on June 9, 2024, regarding Cookie Plug's breach, yet it prompted Cookie Plug to retaliate.

47.    In retaliation, Defendant Martinez removed Mr. Lempinen from over 20 corporate email threads, cutting off access to essential franchise communications and updates.

48.    This act further isolated Mr. Lempinen and destroyed any chance of recovery or operational continuity.

49.    The initial store's failure and the franchisor's misconduct made it infeasible to open the remaining six stores contemplated under the ADA.

50.    Mr. Lempinen reasonably concluded that continuing to invest under the ADA would lead to further financial losses.

51.    To this day, Defendants have refused to refund the $130,500.00 Mr. Lempinen paid in franchise deposits, despite providing no path to profitability.

52.    Moreover, Defendants failed to disclose critical litigation and enforcement actions involving its key executive, Chris Wyland, in violation of

KRONENBERGER ROSENFELD

1 | the Federal Franchise Rule.

2 |     53.   These include cease-and-desist orders from Washington state, a

3 | permanent injunction in Utah, and a default judgment for fraud in Arizona,

4 | none of which were disclosed to Mr. Lempinen.

5 |     54.   A prior arbitration award confirms a pattern of misconduct by

6 | Cookie Plug, including fraudulent inducement, wrongful termination, and

7 | breach of implied-in-fact franchise agreements. *See* **Exhibit 1** attached

8 | hereto.

9 |     55.   In that arbitration (*Cookie Plug 1 Northfield LLC & IBRB*

10 | *Hospitality v. The Cookie Plug, LLC*), the arbitrator found that Cookie Plug

11 | withheld material financial and legal information in violation of franchise laws.

12 |     56.   The arbitrator also found that Cookie Plug wrongfully terminated

13 | a franchisee's rights, cut off dough supply, misrepresented financials, and

14 | failed to disclose key executive litigation history, just like what occurred in Mr.

15 | Lempinen's case.

16 |     57.   The arbitration award rescinded the ADA and awarded over

17 | $223,000 in damages and $55,000 in attorney's fees and costs to the

18 | franchisees.

19 |     58.   Cookie Plug has continued to market and sell franchises despite

20 | widespread location failures and repeated franchisee complaints.

21 |     59.   At least four of five locations in Nevada have closed, and the

22 | remaining one is at risk of shutdown, indicating systemic failure in the

23 | franchise model.

24 |     60.   Cookie Plug's misconduct is not isolated. It is part of a repeated

25 | pattern of deceptive franchise sales, unsupported operations, and wrongful

26 | terminations.

27 |     61.   Mr. Lempinen did not fully discover the extent of Cookie Plug's

28 | misconduct until September 10, 2024, when, following complete due

KRONENBERGER ROSENFELD

1 diligence, he issued a formal demand letter to address the misrepresentations
2 and contractual violations.

3     62.   Despite months of communication and ultimately agreeing to
4 mediation in May 2025 as part of Mr. Lempinen's good faith effort to resolve
5 the dispute pre-suit, Defendant Martinez unilaterally canceled the scheduled
6 mediation on the very day it was to occur, despite knowing that Mr. Lempinen
7 had already flown out to attend.

8     63.   Defendant Martinez made no effort to reschedule or engage in
9 further resolution discussions, clearly demonstrating Cookie Plug's continued
10 bad faith and intent to obstruct and delay justice.

11     64.   Cookie Plug's actions have caused Mr. Lempinen to suffer over
12 $165,000 in additional out-of-pocket losses from store buildout, operations,
13 staffing, and mitigation efforts.

14     65.   Mr. Lempinen continues to suffer reputational harm, business
15 disruption, and significant financial distress because of Cookie Plug's
16 misrepresentations and retaliatory conduct.

17                  **GOVERNING LAW**

18     66.   The ADA's express "Governing Law" clause provides that the
19 laws of the state "where the Development Area is located" shall govern. The
20 Development Area at issue in this case is located in Arizona. Accordingly, the
21 governing law provision unambiguously selects Arizona law to control the
22 interpretation and enforcement of the ADA. To the extent there is any facial
23 conflict between the litigation venue clause and the governing law clause,
24 governing law is determinative of the substantive law to be applied, whereas
25 the litigation clause addresses forum and venue. Plaintiff therefore brings this
26 action under Arizona law, as contractually agreed to by the parties and as
27 required by the terms of the ADA itself.

28 //

KRONENBERGER ROSENFELD

**FIRST CLAIM FOR RELIEF**

**(Common Law Fraud – Fraudulent Inducement by Misrepresentation and Omission)**

**(As to Defendants BIE Brands LLC, BMF Brands LLC, Cookie Plug East, LLC, Erik Martinez, Chris Wyland, and Ryan Usrey)**

67. Plaintiff incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

68. Defendants fraudulently induced Plaintiff to enter into an ADA on or about November 7, 2022, and to pay $130,500.00 in development fees for seven franchise locations, by making affirmative misrepresentations and by concealing material facts they were legally and contractually obligated to disclose.

69. Defendants' conduct constitutes both fraudulent misrepresentation and fraud by omission. Arizona law recognizes that a party may be liable for fraud by omission when it fails to disclose a fact that it has a duty to disclose, with the intent to induce reliance, and where the other party reasonably relies on that omission to their detriment.

70. As confirmed in a similar arbitration award against Cookie Plug (*see* Exhibit 1), Defendants engaged in a pattern of franchise fraud including the use of deceptive earnings representations, the concealment of litigation history involving key executives, and the suppression of internal franchise failures. These same tactics were employed against Plaintiff here.

71. Defendants presented Plaintiff with 2021 revenue numbers for their Anaheim location that showed over $826,000.00 in net sales, but they failed to disclose that by 2023, that same location had declined to $419,000.00, a nearly 50% drop.

72. This intentional omission distorted the perceived profitability and performance stability of the franchise system.

KRONENBERGER ROSENFELD

73.   Defendants also failed to disclose widespread franchise failures, including the closure of multiple locations, the lack of adequate corporate support, and internal instability among its executives.

74.   On or about June 19, 2024, one of those executives, Chris Wyland, disclosed that Defendants received vendor kickbacks, co-mingled franchisee funds, and transferred corporate expenses to personal entities.

75.   These admissions corroborate the fraudulent scheme alleged by Plaintiff.

76.   It was not until Plaintiff fully conducted his own due diligence with undersigned counsel that he realized he had been defrauded on or about September 10, 2024.

77.   Moreover, Defendants failed to disclose critical litigation and enforcement actions involving Defendant Wyland, including (1) a cease-and-desist order in Washington for violations of the Business Opportunity Fraud Act, (2) a $250,000 federal judgment and injunction in Utah, and (3) a fraud-related default judgment in Arizona.

78.   These matters were required to be disclosed under the Federal Franchise Rule and were deemed material in the arbitration award involving another Cookie Plug franchisee.

79.   Plaintiff did not learn of these until he discovered the arbitration award on or about January 8, 2025.

80.   Defendants also failed to provide Plaintiff with a compliant FDD.

81.   Instead, they provided a link to a generic FDD and embedded a blank Franchise Agreement inside hundreds of pages of boilerplate material, never affording Plaintiff the mandatory 14-day review period.

82.   The arbitration award likewise found that Cookie Plug failed to provide a compliant FDD and failed to disclose litigation and earnings information in violation of both the Federal Franchise Rule and common law

1  fraud standards.

2      83.    Defendants intended for Plaintiff to rely on these omissions and

3  misrepresentations in entering into the ADA and in making substantial

4  monetary investments in his first store.

5      84.    Plaintiff reasonably relied on the curated and incomplete

6  information presented by Cookie Plug, and was unaware of the concealed

7  litigation, earnings declines, and systemic operational issues.

8      85.    As a result of Defendants' fraudulent inducement, Plaintiff

9  suffered substantial damages, including the loss of all development deposits,

10  over $165,000.00 in out-of-pocket costs, and the complete collapse of his first

11  location.

12      86.    Defendants' conduct was knowing, intentional, and malicious

13  because Defendants were fully aware of concealing deficiencies in earnings,

14  previous litigation, and systemic operational issues for the purpose of

15  inducing Plaintiff into the ADA.

16                      **SECOND CLAIM FOR RELIEF**

17                       **(Negligent Misrepresentation)**

18  **(As to Defendants BIE Brands LLC, BMF Brands LLC, Cookie Plug**

19        **East, LLC, Erik Martinez, Chris Wyland, and Ryan Usrey)**

20      87.    Plaintiff incorporates by reference all preceding and subsequent

21  paragraphs as though fully set forth herein.

22      88.    Even if not intentional, Defendants provided false and materially

23  misleading information to Plaintiff in the course of a business transaction. This

24  includes inaccurate financial data, incomplete projections, and concealment

25  of relevant litigation and operational failures.

26      89.    Defendants had a duty to provide accurate information to

27  prospective franchisees and knew or should have known that Plaintiff would

28  reasonably rely on the information provided in making a substantial financial

1 investment.

2      90.    Defendants failed to exercise reasonable care or competence in

3 obtaining and communicating information about franchise performance,

4 litigation disclosures, and the financial viability of the system.

5      91.    Plaintiff justifiably relied on the information and projections

6 presented to him, including the inflated 2021 financials and the franchisor's

7 claims regarding systemwide profitability and support.

8      92.    As a result of that reliance, Plaintiff suffered damages including,

9 but not limited to, the loss of initial deposits, failed store investment, and other

10 consequential harm.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract)**

**(As to Defendant BIE Brands LLC)**

14      93.    Plaintiff incorporates by reference all preceding and subsequent

15 paragraphs as though fully set forth herein.

16      94.    Plaintiff and Defendants entered into a valid and enforceable ADA

17 on November 7, 2022. Plaintiff paid $130,500.00 to Defendants in exchange

18 for the right to develop and open seven Cookie Plug franchise locations, with

19 the understanding that he would receive operational support, exclusive rights,

20 and access to proprietary products.

21      95.    Defendants materially breached the ADA in multiple respects,

22 including but not limited to:

23      a)     Failing to provide adequate operational support to the first store;

24      b)     Failing to assist in resolving known payment processing issues

25 that disrupted franchise fee collections;

26      c)     Unilaterally and wrongfully cutting off Plaintiff's access to

27 proprietary cookie dough, which was essential to store operations;

28      d)     Issuing a cease-and-desist letter for using alternative dough

KRONENBERGER ROSENFELD

1    during a period when Defendants had themselves caused the disruption;

2    e)    Failing to maintain corporate communication channels and
3    retaliating against Plaintiff after he issued a litigation preservation notice; and

4    f)    Failing to disclose adverse litigation history and material franchise
5    system failures in violation of express and implied covenants.

6    96.    These breaches mirror the wrongful conduct found to constitute
7    breach of contract and wrongful termination in the arbitration award issued
8    against Cookie Plug in *IBRB Hospitality Group LLC v. The Cookie Plug LLC*.
9    *See* Exhibit 1.

10    97.    In that case, the arbitrator found that Cookie Plug wrongfully
11    terminated an Area Development Agreement despite the franchisee being
12    contractually entitled to additional time for development.

13    98.    The arbitrator also found that Cookie Plug wrongfully revoked
14    franchise rights by cutting off product access and communications without
15    cause.

16    99.    Here, Defendants' actions had the same effect. By revoking
17    Plaintiff's access to cookie dough, failing to process payments, refusing to
18    assist in recovery, and cutting off communications, Defendants sabotaged
19    Plaintiff's store and rendered it impossible for him to meet the development
20    schedule or generate revenue.

21    100.    As stated in the arbitration award: "Based on the above evidence,
22    the Arbitrator finds that Erik Martinez, on behalf of Cookie Plug, terminated or
23    anticipatorily repudiated the implied-in-fact Franchise Agreement by
24    declaring that Cookie Plug was withdrawing the rights the Parties understood
25    were granted under the Franchise Agreement." *See* Exhibit 1.

26    101.    This finding mirrors the conduct directed at Plaintiff, where
27    Defendant Martinez's conduct constituted a constructive and wrongful
28    termination of the ADA, and an abandonment of Cookie Plug's contractual

1   obligations.

2   102.  Plaintiff was deprived of the benefit of his bargain despite fully

3   performing his end of the agreement, including payment of all required

4   deposits and full buildout of the first location.

5   103.  As a direct and proximate result of Defendants' breach of

6   contract, Plaintiff has suffered substantial damages, including but not limited

7   to: loss of deposits, loss of capital investments, reputational harm, lost profits,

8   and the complete destruction of a viable franchise opportunity.

9   104.  Plaintiff seeks damages for breach of contract in an amount to be

10  proven at trial, including consequential and incidental damages, and any

11  other relief the Court deems just and proper.

12  **FOURTH CLAIM FOR RELIEF**

13  **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

14  **(As to Defendant BIE Brands LLC)**

15  105.  Plaintiff incorporates by reference all preceding and subsequent

16  paragraphs as though fully set forth herein.

17  106.  Under Arizona law, every contract includes an implied covenant

18  of good faith and fair dealing, requiring that neither party do anything that will

19  injure the rights of the other to receive the benefits of the agreement.

20  107.  Defendants acted in bad faith by sabotaging Plaintiff's operations,

21  cutting off access to essential products, refusing to assist with recovery

22  efforts, and removing Plaintiff from company-wide communications after

23  receiving a litigation preservation notice.

24  108.  Defendants also misused their discretion under the ADA to punish

25  and isolate Plaintiff when he began asserting his rights and raising concerns

26  about mismanagement and systemic failure.

27  109.  These acts frustrated the purpose of the ADA and destroyed

28  Plaintiff's ability to benefit from the contract despite Plaintiff's full performance

KRONENBERGER ROSENFELD

1    and willingness to develop additional locations.

2        110. As a result, Plaintiff has suffered damages including failed

3    business investment, unrecoverable deposits, lost future income, and

4    substantial consequential harm.

5    **FIFTH CLAIM FOR RELIEF**

6    **(Unjust Enrichment, in the alternative)**

7    **(As to Defendants BIE Brands LLC, BMF Brands LLC,**

8    **and Cookie Plug East, LLC)**

9        111. Plaintiff incorporates by reference all preceding and subsequent

10   paragraphs as though fully set forth herein.

11       112. This claim is pled in the alternative to Plaintiff's contract claims in

12   the event the Court finds no enforceable agreement governs the relationship

13   or rescinds the contract due to fraud.

14       113. Defendant Cookie Plug East, LLC has been unjustly enriched at

15   Plaintiff's expense by retaining $130,500.00 in franchise development

16   deposits for locations that will never open and which Defendants had no

17   intention or capacity to support.

18       114. Defendants BIE Brands LLC and BMF Brands LLC further

19   benefited from Plaintiff's investments in store buildout, staffing, and

20   operational infrastructure, which they later sabotaged or withdrew support

21   from entirely.

22       115. Defendants' retention of these funds and benefits is inequitable

23   under the circumstances, particularly given the fraudulent and deceptive

24   means by which they were procured.

25       116. If no valid and enforceable contract governs the return of these

26   funds, Plaintiff is entitled to restitution under the doctrine of unjust enrichment.

27   //

28   //

KRONENBERGER ROSENFELD

**SIXTH CLAIM FOR RELIEF**

**(Tortious Interference with Prospective Economic Advantage)**

**(As to Defendant Erik Martinez)**

117. Plaintiff incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

118. Plaintiff had valid business expectancies and economic relationships related to the operation of his first Cookie Plug franchise location and the future development of six additional locations under the ADA.

119. Plaintiff's investment in the franchise system was substantial, and he had a reasonable probability of realizing business success, revenue, and expansion through the development schedule if allowed to operate without wrongful interference.

120. Defendant Martinez, as owner of BIE Brands LLC, was fully aware of these expectancies and economic opportunities, as BIE Brands LLC was contractually obligated to support them under the ADA.

121. Despite that knowledge, Defendant Martinez intentionally and unjustifiably interfered with Plaintiff's ability to realize these economic opportunities by:

a) Cutting off access to proprietary cookie dough and essential supply chains without notice or support;

b) Falsely accusing Plaintiff of non-compliance and issuing a cease-and-desist letter despite knowing he had no alternative due to their own supply failures;

c) Refusing to resolve known ACH payment processing issues despite Plaintiff's good faith attempts to cure them; and

d) Removing Plaintiff from corporate communications following his issuance of a litigation hold notice, thereby severing all coordination and access to systemwide information.

KRONENBERGER ROSENFELD

122.  These acts were not mere contract breaches; they were targeted, intentional disruptions designed to sabotage Plaintiff's ability to operate and expand.

123.  Defendant Martinez's conduct was motivated by retaliation and an effort to force Plaintiff out of the system and was committed without legal justification.

124.  As a direct and proximate result of Defendant Martinez's wrongful interference, Plaintiff suffered significant damages including the loss of business revenue, sunk investment costs, reputational harm, and the inability to proceed with his future store development.

## SEVENTH CLAIM FOR RELIEF

### (Violation of the Arizona Consumer Fraud Act (A.R.S. § 44-1522))

### (As to Defendants BIE Brands LLC, BMF Brands LLC, Cookie Plug East, LLC, Erik Martinez, Chris Wyland, and Ryan Usrey)

125.  Plaintiff incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

126.  Defendants engaged in deceptive and unfair business practices in violation of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1522, in connection with their offer and sale of franchise development rights to Plaintiff.

127.  The ACFA prohibits any deception, fraud, false pretense, false promise, misrepresentation, or concealment of material fact in connection with the sale or advertisement of merchandise. "Merchandise" includes services, franchise rights, and other commercial opportunities offered for sale.

128.  In the course of soliciting Plaintiff to enter into the ADA and invest in a seven-location franchise development, Defendants made multiple misrepresentations and concealed critical facts they were legally obligated to

KRONENBERGER ROSENFELD

disclose. These include, but are not limited to:

a)    Presenting 2021 revenue figures for the Anaheim franchise location that showed more than $826,000 in net sales, while omitting the fact that by 2023 that same location's sales had declined nearly 50 percent, to just over $419,000, rendering the figures materially misleading;

b)    Failing to disclose the widespread failure of Cookie Plug franchise locations, including the closure of four out of five stores in Nevada, and internal instability that included disputes between executives and operational dysfunction;

c)    Failing to provide Plaintiff with a compliant FDD as required by the Federal Trade Commission Franchise Rule (16 C.F.R. § 436.1 et seq.), instead providing a non-compliant, generic FDD link with an incomplete, unsigned Franchise Agreement buried within hundreds of pages of boilerplate content;

d)    Failing to disclose material litigation and regulatory enforcement actions involving key executive Chris Wyland, including: (i) a cease-and-desist order from the Washington State Department of Financial Institutions for violations of the Business Opportunity Fraud Act; (ii) a $250,000 judgment and permanent injunction entered against him in federal court in Utah; and (iii) a default judgment in Arizona for fraud and related claims. These facts were not only highly material to any prospective franchisee, but were also required disclosures under federal franchise law and the FTC Franchise Rule; and

e)    Making false assurances that the franchise system was scalable, profitable, and supported by an experienced corporate team when in fact Defendants were internally fractured, lacked the infrastructure to support new franchisees, and concealed systemic financial failures within the business model.

129.  Defendants knew, or should have known, that these omissions and misrepresentations were false and material.

130.  They were made with the intent to induce Plaintiff to rely on the false narrative that the Cookie Plug franchise was a promising investment opportunity, and to cause Plaintiff to execute the ADA and pay substantial franchise deposits.

131.  Plaintiff reasonably relied on these representations and omissions in making the decision to invest. He was not provided with material information that would have caused a reasonable investor to decline or at minimum delay any investment in the franchise system.

132.  As a direct and proximate result of Defendants' deceptive and unlawful conduct, Plaintiff suffered actual and consequential damages, including but not limited to: (i) the loss of $130,500.00 in franchise development deposits; (ii) more than $165,000.00 in store buildout, operational, and mitigation costs; (iii) reputational harm; and (iv) the complete failure of his first location due to lack of franchisor support and intentional sabotage by Defendants.

133.  Under A.R.S. § 44-1534, Plaintiff is entitled to recover actual damages sustained as a result of Defendants' violations of the ACFA, together with his reasonable attorney's fees and costs.

134.  The following paragraphs provide further detail regarding each Defendant's involvement in the fraudulent scheme.

135.  Defendant Wyland personally signed the ADA with Plaintiff on behalf of the named franchisor entity and actively participated in the franchise sales process.

136.  Defendant Wyland failed to disclose his own litigation and regulatory history, including a cease-and-desist order in Washington, a federal judgment in Utah, and a default judgment in Arizona.

20

137.  These omissions were material to the franchise offering and violated disclosure obligations under both federal law and the ACFA.

138.  Defendant Wyland also directed or approved the use of inflated financial performance data and failed to provide a compliant FDD.

139.  Defendant Usrey is listed as the franchise seller on the FDD receipt provided to Plaintiff.

140.  Upon information and belief, Defendant Usrey facilitated the offering of the franchise to Plaintiff and was the individual who submitted the FDD documents and executed the receipt attesting to compliance.

141.  Defendant Usrey either knew or should have known that the disclosures were deficient, and that material information was withheld from Plaintiff in violation of Arizona law.

142.  His direct role in delivering the misleading franchise materials renders him personally liable under the ACFA.

143.  Defendant BIE Brands LLC is the successor entity to The Cookie Plug Group LLC, the franchisor listed in the ADA signed by Plaintiff.

144.  The fraudulent representations and omissions were made in BIE Brands LLC's name and for its benefit.

145.  BIE Brands LLC is liable for the acts of its officers and agents, including Defendants Wyland and Usrey, who solicited the investment and executed the franchise sale.

146.  The entity's failure to disclose material litigation, financial declines, and regulatory history violated its statutory duty as franchisor under the ACFA.

147.  Defendant BMF Brands LLC was managed by both Defendants Wyland and Martinez at the time the franchise was offered and sold to Plaintiff.

148.  Upon information and belief, Defendant BMF Brands LLC

1  functioned as a controlling affiliate or operating arm of the Cookie Plug

2  franchise system and benefited directly from the fees paid by Plaintiff.

3      149.  Defendant BMF Brands LLC either participated in or ratified the

4  sale of franchises using non-compliant disclosure practices and materially

5  false or incomplete financial representations. It is liable under the ACFA as

6  an entity that facilitated or profited from the unlawful sale.

7      150.  Defendant Martinez is the founder and principal architect of the

8  Cookie Plug franchise system.

9      151.  Defendant Martinez exercised control over the franchisor entities

10  and directed the use of misleading earnings representations and the

11  suppression of material facts about franchise failure rates and litigation

12  history.

13      152.  Even if Defendant Martinez did not personally execute the sale to

14  Plaintiff, he authorized, approved, or knowingly permitted the conduct that

15  violated Arizona's consumer protection laws. His leadership role and active

16  participation render him individually liable under the ACFA.

17      153.  Defendant Cookie Plug East, LLC is one of the primary operating

18  entities within the Cookie Plug franchise enterprise.

19      154.  Upon information and belief, it received Plaintiff's investment

20  through wire transfer and participated in the franchising operations during the

21  relevant period.

22      155.  Cookie Plug East, LLC functioned as part of the enterprise that

23  marketed and supported franchisees while failing to comply with mandatory

24  disclosure obligations. It is therefore jointly liable for the consumer fraud

25  facilitated through its affiliated officers and agents.

26                          **PRAYER FOR RELIEF**

27      WHEREFORE, Plaintiff respectfully requests that the Court enter

28  judgment in their favor and against Defendants, and award the following relief:

KRONENBERGER ROSENFELD

A. For rescission of the Area Development Agreement and restitution of all amounts paid by Plaintiff to Defendants, including but not limited to initial franchise fees, development fees, training expenses, and other out-of-pocket losses;

B. Alternatively, and only if rescission is unavailable, for compensatory damages for breach of contract and breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial;

C. Restitution of all amounts paid by Plaintiff, including but not limited to the $130,500.00 in franchise development deposits;

D. Compensatory damages, including consequential and incidental losses, in an amount to be determined at trial;

E. Damages for lost profits, lost business opportunities, reputational harm, and other economic injuries proximately caused by Defendants' conduct;

F. Punitive or exemplary damages as permitted by law for Defendants' fraudulent, malicious, and oppressive conduct;

G. Disgorgement or restitution under principles of unjust enrichment where applicable;

H. Attorney's fees and costs pursuant to A.R.S. § 12-341.01, A.R.S. § 44-1534, and any other applicable authority;

I. Pre-judgment and post-judgment interest as allowed by law; and

J. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

DATED: September 10, 2025        **KRONENBERGER ROSENFELD, LLP**

By: s/ Leah Rosa Vulić
Leah Rosa Vulić

KRONENBERGER ROSENFELD

**RM WARNER, PLC**
Raeesabbas Mohamed, Esq. (*pro hac vice* forthcoming)
8283 N. Hayden Road, Ste 229
Scottsdale, AZ 85258
raees@rmwarnerlaw.com
Telephone: (480) 331-9397
Facsimile: (866) 961-4984

*Attorneys for Plaintiff Skylar Lempinen*

1

## DEMAND FOR JURY TRIAL

2      Plaintiff Skylar Lempinen hereby demands a trial by jury to decide all

3  issues so triable in this case.

4

5  DATED: September 10, 2025      **KRONENBERGER ROSENFELD, LLP**

6

7                                By: s/ Leah Rosa Vulić
                                    Leah Rosa Vulić
8

9                                *Attorneys for Plaintiff Skylar Lempinen*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT 1**

**ADR-106**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY STATE BAR NUMBER: 240344<br>NAME: Michael Wallin<br>FIRM NAME: Wallin & Russell LLP<br>STREET ADDRESS: 26000 Towne Centre Drive Suite 130<br>CITY: Foothill Ranch STATE: CA ZIP CODE: 92610<br>TELEPHONE NO.: 949-652-2202 FAX NO.: 949-652-2210<br>EMAIL ADDRESS: mwallin@wallinrussell.com<br>ATTORNEY FOR (name): Cookie Plug 1 Northfield LLC and IBRB Hospitality Group, LLC | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: same
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Riverside Historic Courthouse

PETITIONER: Cookie Plug 1 Northfield LLC and IBRB Hospitality Group, LLC
RESPONDENT: The Cookie Plug Group, LLC, et al.

| PETITION TO [x] CONFIRM [ ] CORRECT [ ] VACATE<br>CONTRACTUAL ARBITRATION AWARD | |
|---|---|
| **Jurisdiction** (check all that apply):<br>[ ] **Action is a limited civil case** (does not exceed $35,000)<br>   Amount demanded [ ] does not exceed $10,000<br>                  [ ] exceeds $10,000<br>[x] **Action is an unlimited civil case** (exceeds $35,000) | CASE NUMBER:<br>CVRI2403749 |

**NOTICE: You may use this form to request that the court confirm, correct, or vacate an award in an arbitration conducted pursuant to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq. and that does not involve an attorney-client fee dispute. If you are requesting court action after an attorney-client fee arbitration award, please read Alternative Dispute Resolution form ADR-105, *Information Regarding Rights After Attorney-Client Fee Arbitration.***

1. **Petitioner and respondent.** Petitioner (name each):
   Cookie Plug 1 Northfield LLC and IBRB Hospitality Group, LLC


   alleges and requests relief against respondent (name each):
   The Cookie Plug Group, LLC; BIE Brands, formerly known as The Cookie Plug Group, LLC LLC; and The Cookie Plug LLC


2. **Contractual arbitration.** This petition requests the court to confirm, correct, or vacate an award in an arbitration conducted according to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq.

3. Pending or new action.
   a. [ ] A court case is already pending, and this is a petition filed in that action. (If so, proceed to item 4.)
   b. [x] This petition commences a new action. (If so, complete items 3b(1) through 3b(4).)

   (1) **Petitioner's capacity.** Each petitioner named in item 1 is an individual,
      [x] except petitioner (state name and complete one or more of the following) Cookie Plug 1 Northfield LLC and IBRB
                                                            Hospitality Group, LLC
      (a) [ ] is a corporation qualified to do business in California.
      (b) [ ] is an unincorporated entity (specify):
      (c) [ ] is a representative (specify):
      (d) [x] is (specify other capacity): Cookie Plug 1 Northfield LLC is a Colorado limited liability company. IBRB Hospitality Group, LLC is a Colorado limited liability company.

   (2) **Respondent's capacity.** Each respondent named in item 1 is an individual,
      [x] except respondent (state name and complete one or more of the following) The Cookie Plug Group, LLC; BIE Brands,
                                                              formerly known as The Cookie Plug Group,
      (a) [ ] is a business organization, form unknown.            LLC LLC; and The Cookie Plug LLC
      (b) [ ] is a corporation.
      (c) [ ] is an unincorporated entity (specify):
      (d) [ ] is a representative (specify):
      (e) [x] is (specify other capacity): The Cookie Plug Group, LLC is a Nevada limited liability company. BIE Brands LLC is a California limited liability company.
                    The Cookie Plug LLC is a limited liability company from a state unknown.

**PETITION TO CONFIRM, CORRECT, OR VACATE**
**CONTRACTUAL ARBITRATION AWARD**
**(Alternative Dispute Resolution)**

Code of Civil Procedure, § 1285 et seq.

| PETITIONER: Cookie Plug 1 Northfield LLC and IBRB Hospitality Group, LLC | CASE NUMBER: |
|---|---|
| RESPONDENT: The Cookie Plug Group, LLC, et al. | CVRI 2403749 |

3. b. (3) **Amount or property in dispute.** This petition involves a dispute over *(check and complete all that apply)*

    (a) ☒ the following amount of money *(specify amount):* $ 278,722.24

    (b) ☐ property *(if the dispute involves property, complete both of the following)*

        (i) consisting of *(identify property in dispute):*

        (ii) having a value of *(specify value of property in dispute):* $

  (4) ☒ **Venue.** This court is the proper court because *(check (a) or (b)):*

    (a) ☒ this is the court in the county in which the arbitration was held.

    (b) ☐ the arbitration was not held exclusively in any county of California, or was held outside of California,
         **and** *(check one or more of the following):*

        (i) ☐ this is the court in the county where the agreement was made.

        (ii) ☐ this is the court in the county where the agreement is to be performed.

        (iii) ☐ the agreement does not specify a county where it is to be performed and was not made in any
            county in California, and the following party resides or has a place of business in this county
            *(name of party):*

        (iv) ☐ the agreement does not specify a county where it is to be performed and was not made in any
            county in California, and no party to this action resides or has a place of business in California.

4. **Agreement to arbitrate.**

  a. **Date**. Petitioner and respondent entered into a written agreement on or about *(date):* March 25, 2022

  b. ☐ **Attachment.** A copy of the agreement is submitted as Attachment 4(b) and incorporated herein by this reference.

  c. **Arbitration provision.** Paragraph __14.2__ of the agreement provides for arbitration of disputes arising out of the
    agreement as follows *(either copy the arbitration provision in full or summarize the provision):* 14.2 Arbitration.

  (a) Except as specifically provided in sections 13.2(c) and 13.3(c) above, any Dispute between Franchisor (or its affiliated entities) and Franchisee (or
  its Principal Equity Owners or affiliated entities) not settled through the procedures described in section 14.1 above, or any determination of the scope
  or applicability of this agreement to arbitrate, will be resolved through binding arbitration by and before JAMS, Inc. ("JAMS"), in accordance with its
  Streamlined Arbitration Rules and Procedures (if the amount in controversy is less than $250,000) or its Comprehensive Arbitration Rules and
  Procedures (if the amount in THE COOKIE PLUG ADA 011321(082021) 86 controversy is $250,000 or more), or if the parties in dispute mutually
  agree, through binding arbitration by any other mutually agreeable arbitrator. It is explicitly agreed by each of the parties hereto that no arbitration of
  any Dispute may be commenced except in accordance with this section 14.2.

5. **Dispute subject to arbitration.** A dispute arose between petitioner and respondent concerning the following matter covered by
  the agreement to arbitrate *(summarize the dispute):*

  See Attachment 5

6. **Arbitrator.** The following person was duly selected or appointed as arbitrator *(name of each arbitrator):*
  Barbara A. Reeves, Esq.

7. **Arbitration hearing.** The arbitration hearing was conducted as follows *(complete both of the following):*

  a. **Date** *(each date of arbitration):* August 22, 2023

  b. **Location** *(city and state where arbitration was conducted):*
    Riverside, California

8. **Arbitration award.**

  a. **Date of award.** The arbitration award was made on *(date):* September 25, 2023

  b. **Terms of award.** The arbitration award *(check one or more of the following)*

    (1) ☒ requires ☐ petitioner ☒ respondent to pay the other party this amount: $ 278,722.24

    (2) ☐ requires neither party to pay the other anything.

    (3) ☐ is different as to different petitioners and respondents.

    (4) ☒ provides *(specify other terms or check item 8(c) and attach a copy of the award):*

  c. ☒ **Attachment of Award.** A copy of the award is submitted as Attachment 8(c).

9. **Service of award.**

  a. The signed award or an accompanying document indicates that the award was served on petitioner on *(date):*

  b. ☒ Petitioner alleges that a signed copy of the award was actually served on *(date):* September 25, 2023

**PETITION TO CONFIRM, CORRECT, OR VACATE
CONTRACTUAL ARBITRATION AWARD
(Alternative Dispute Resolution)**

| | |
|---|---|
| PETITIONER:   Cookie Plug 1 Northfield LLC and IBRB Hospitality Group, LLC | CASE NUMBER: |
| RESPONDENT:   The Cookie Plug Group, LLC, et al. | CVRI2403749 |

**10. Petitioner requests that the court** *(check all that apply)*

a. [x]  **confirm the award, and enter judgment according to it.**

b. [ ]  **correct the award and enter judgment according to the corrected award, as follows:**

   (1)  The award should be corrected because *(check all that apply)*

      (a) [ ]  the amount of the award was not calculated correctly, or a person, thing, or property was not described correctly.

      (b)  the arbitrator exceeded his or her authority.

      (c)  the award is imperfect as a matter of form.

   (2)  The facts supporting the grounds for correcting the award alleged in item 10b(1) are as follows *(if additional space is required, check here [ ] and submit facts on an attachment labeled 10b(2)):*

   (3)  The award should be corrected as follows *(if additional space is required, check here [ ] and describe requested correction on an attachment labeled 10b(3)):*

c. [ ]  **Vacate (cancel) the award.**

   (1)  The award should be vacated because *(check all that apply)*

      (a) [ ]  the award was obtained by corruption, fraud, or other unfair means.

      (b) [ ]  an arbitrator was corrupt.

      (c) [ ]  the misconduct of a neutral arbitrator substantially prejudiced petitioner's rights.

      (d) [ ]  the arbitrator exceeded his or her authority, and the award cannot be fairly corrected.

      (e) [ ]  the arbitrator unfairly refused to postpone the hearing or to hear evidence useful to settle the dispute.

      (f) [ ]  an arbitrator failed to disclose within the time for disclosure a ground for disqualification of which the arbitrator was then aware.

      (g) [ ]  an arbitrator should have disqualified himself or herself after petitioner made a demand to do so.

   (2)  The facts supporting the grounds for vacating the award alleged in item 10c(1) are as follows *(if additional space is required, check here [ ] and submit facts on an attachment labeled 10c(2)):*

   (3)  Petitioner [ ] does [ ] does not request a new arbitration hearing.

d. [x]  **Award petitioner interest** from *(date):* 9/26/2023

   (1) [X]  at the statutory rate.

   (2) [ ]  at rate of _____ % per year.

e. [x]  **Award petitioner costs of suit**

   (1) [X]  in the amount of: $ 435.00

   (2) [ ]  according to proof.

f. [x]  **Award petitioner attorney fees incurred in this action** *(check only if attorney fees are recoverable in this action according to statute or the parties' agreement)*

   (1) [X]  in the amount of: $ 5,450.00

   (2) [ ]  according to proof.

g. [ ]  **Award petitioner the following other relief** *(describe relief requested; if additional space is required, check here [ ] and describe relief on an attachment labeled 10g):*

**11. Pages and attachments.** *Number of pages attached:* 19

Date:  June 27, 2024

| | |
|---|---|
| Michael Wallin | ▶ *(signature)* |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PETITIONER OR ATTORNEY) |

**PETITION TO CONFIRM, CORRECT, OR VACATE
CONTRACTUAL ARBITRATION AWARD
(Alternative Dispute Resolution)**

# Attachment 5

## ATTACHMENT 5

The arbitration arose from an Area Development Agreement ("ADA") and implied-in-fact Franchise Agreement ("FA") between Respondent The Cookie Plug, LLC  aka The Cookie Plug Group LLC LLC aka The Cookie Plug Group LLC, and its successor in interest BIE Brands LLC ("Respondents"), and Claimants Cookie Plug 1 Northfield LLC and IBRB Hospitality Group LLC ("Claimants").

Claimants filed a Demand for Arbitration on February 27, 2023, for (1) Breach of the Implied in Fact Contract (Franchise Agreement); (2) Fraud, Fraudulent Inducement, Misrepresentation, Negligent Misrepresentation, and Violation of the Colorado Unfair Trade Practices Act, based on, inter alia, violations of the Federal Franchise Rule (16 C.F.R. 436.1 et seq.); and (3) Breach of Covenant of Good Faith and Fair Dealing (Franchise Agreement). On April 3, 2023, Claimants filed an Amended Demand, adding claims for (4) Declaratory Relief; (5) Recission of the Franchise Agreement and the Area Development Agreement, and (6 Tortious Interference with Prospective Economic Advantage.   These claims were based upon Respondents fraud by omission related to the sale of the ADA and the implied in-fact Franchise Agreement and Respondents' breach of the ADA and FA.

In the Final Award dated September 25, 2023, Arbitrator, Barbara Reeves, found that:

a.  Claimants were fraudulently induced to enter into the Implied-In-Fact Franchise Agreement and the Area Development Agreement, and IBRB was entitled to an award of $150,000 and Northfield was entitled to an award of $73,026.57;

b.  Respondents breached the ADA by wrongfully terminating/repudiating same, and IBRB is entitled to an award of damages in the amount of $150,000, as well as an award of attorneys' fees pursuant to the ADA;

c.  Respondents breached the implied-in-fact Franchise Agreement by wrongfully terminating/repudiating same; and are entitled to damages.

d.  Claimants Cookie Plug 1 Northfield LLC, and IBRB Hospitality Group LLC, are entitled to one award of the above damages in the total sum of $223,026.57, $150,000 to IBRB Hospitality Group LLC, and $73,026.57 to Cookie Plug 1 Northfield LLC, against Respondents The Cookie Plug Group, LLC; BIE Brands, formerly known as The Cookie Plug Group, LLC LLC; and The Cookie Plug LLC, jointly and severally, rather than duplicative damages for the fraud and breach of contract claims, and the default award.

e.  Claimants are entitled to declaratory relief, that Respondents wrongfully terminated the ADA and implied-in-fact Franchise Agreement, and that IBRB, Robert Barsky and Igor Barsky have no further duties, obligations, or dents owed to Respondents under the ADA; and Northfield, IBRB, Robert Barsky and Igor Barsky have no further duties, obligations, or debts owed to Respondents under the implied-in-fact Franchise Agreement.

f.  That Claimants were the prevailing party and entitled to an award of attorneys fees and costs/expenses as follows: $36,644.50 and an award of costs/expenses in the amount of $19,031.17, for a total of $55,659.67;

# Attachment 8(c)

## JAMS ARBITRATION: REF. NO. 5220002693

Cookie Plug 1 Northfield LLC, and IBRB
Hospitality Group LLC,

                Claimants,

and

The Cookie Plug Group, LLC; BIE Brands,
formerly known as The Cookie Plug Group,
LLC LLC; and The Cookie Plug LLC,

                Respondents.

**FINAL AWARD**

**Place of Arbitration:**  **Riverside County, California (via Zoom)**

**Date of Final Award: September 25, 2023**

Mario L. Herman Esq.
Law Office of Mario L. Herman
5335 Wisconsin Avenue N.W., Suite 440
Washington, DC   20015
Tel: 202-686-2886
Email: mherman@franchise-law.com

Counsel for: Cookie Plug 1 Northfield LLC, and IBRB Hospitality Group LLC

Cassandra Escamilla
BIE Brands LLC aka Cookie Plug Group LLC
16379 East Preserve Loop
Chino, CA 91708
Email: cassi@thecookieplug.com

**Arbitrator:**

Barbara A. Reeves, Esq.
JAMS
1925 Century Park East, Suite 1400
Los Angeles, CA 90067
Office: (310) 392-3044
Email:  BReeves@jamsadr.com

THE UNDERSIGNED ARBITRATOR, having been designated in accordance with The Cookie Plug, LLC Franchise Agreement, and The Cookie Plug Area Development Agreement between The Cookie Plug Group LLC and IBRB Hospitality Group LLC, which each contain an arbitration provision as set forth below, and having examined the submissions, proof, and allegations of the Parties, finds, concludes and issues this Interim Award as follows.

## I.      INTRODUCTION AND PROCEDURAL STATEMENT

Claimants Cookie Plug 1 Northfield LLC, and IBRB Hospitality Group LLC ("Claimants") filed a Demand for Arbitration on February 27, 2023, for (1) Breach of the Implied in Fact Contract (Franchise Agreement); (2) Fraud, Fraudulent Inducement, Misrepresentation, Negligent Misrepresentation, and Violation of the Colorado Unfair Trade Practices Act, based on, inter alia, violations of the Federal Franchise Rule (16 C.F.R. 436.1 et seq.); and  (3) Breach of Covenant of Good Faith and Fair Dealing (Franchise Agreement). On April 3, 2023, Claimants filed an Amended Demand, adding claims for (4) Declaratory Relief; (5) Recission of the Franchise Agreement and the Area Development Agreement, and (6) Tortious Interference with Prospective Economic Advantage.

On or about June 28, 2023, Claimants amended their Demand to change the Respondent's name to BIE Brands LLC (formerly known as: The Cookie Plug Group LLC). The Arbitrator added BIE Brands LLC as a Respondent, as the successor to The Cookie Plug Group LLC, The Cookie Plug Group LLC LLC, and The Cookie Plug LLC. Claimants produced evidence that according to the State of California, Office of the Secretary of State, Amendment of Articles of Organization CA, Limited Liability Company File No.: BA20230572374, dated April 5, 2023, The Cookie Plug Group LLC LLC changed its name to BIE Brands LLC. In addition, according to the State of California, Office of the Secretary of State, Statement of Information Limited Liability Company, File No.: BA20230572067, dated April 5, 2023, BIE Brands LLC (formerly known as: The Cookie Plug Group LLC LLC), changed the Chief Executive Officer from Erik Martinez to Cassandra Escamilla. In the same document, the Agent for Service of Process was changed from Erik Martinez to Cassandra Escamilla located at:  16379 East Preserve Loop, Chino, CA 91708.

The Respondent's name was changed to include the new name, BIE Brands LLC (formerly known as: The Cookie Plug Group LLC LLC), and the new Agent of Service information was updated in the JAMS file and service list as the Respondent's new address.  Based upon the above information, this Arbitration Award includes all of the above entity names.

The Cookie Plug, LLC Franchise Agreement ("Franchise Agreement"), and The Cookie Plug Area Development Agreement ("ADA") between The Cookie Plug Group LLC and IBRB Hospitality Group LLC, contain almost identical arbitration clauses at sections 14 and 7, respectively. The arbitration agreements provide that the Federal Arbitration Act governs, the applicable substantive law is the law of the State of Colorado, and the JAMS Comprehensive Arbitration Rules and Procedures ("Rules") apply to this arbitration. The arbitration provision "is deemed to be self-executing and will remain in full force and effect after expiration or termination of this Agreement." Section 14.2(f), 7.2(f).

A preliminary hearing was conducted in this matter on June 5, 2023, pursuant to written notice. Counsel appeared for Claimant Cookie Plug 1 Northfield LLC, and IBRB Hospitality Group LLC. There was no appearance for Respondent Cookie Plug Group, LLC.  Pursuant to Rules 19(b) and 22(g), the Arbitrator set the Arbitration Hearing for August 22, 2023, via the JAMS remote Zoom platform, commencing at 9:00 a.m. (The arbitration agreements provide that the Hearing shall take place in Riverside County, California. Pursuant to the Arbitrator's authority under JAMS Rule 22(g), the Arbitrator determined that the Hearing would be conducted virtually by the JAMS videoconference platform.)  A Report of Preliminary Hearing and Case Management Order No. 1 was issued and served on all Parties on June 6, 2023. Notice of Hearing was served on all Parties on June 7, 2023.

A Final Status Conference was conducted pursuant to notice on July 20, 2023. Respondent did not appear.

The Arbitration Hearing was held on August 22, 2023, pursuant to notice. Respondent did not appear.

The arbitration agreements provide for a default award if a party fails to appear or participate:

> If either party fails to appear or participate in the arbitration proceeding, the other party will be entitled to a default judgment award. The arbitration award will be final and binding on the Parties, and judgment on the award may be entered in any federal or state court having jurisdiction.

Section 14.2(c), 7.2(c).

Under JAMS Comprehensive Arbitration Rules & Procedures, while the Arbitrator "may proceed" with a Hearing in which a party fails to attend, "[t]he Arbitrator may not render an Award solely on the basis of the default or absence of the Party," and requires the non-defaulting party to "submit such evidence as the Arbitrator may require for the rendering of an Award." See JAMS Rules, R. 22(j). However, the Parties may in agree in writing, as they did in their arbitration agreements, on procedures in addition to or in lieu of the Rules. Rule 2(a) "Party Self-Determination."

In the interest of thoroughness, the Arbitrator elected to proceed with a noticed Arbitration Hearing, with the submission of testimony, declarations, and exhibits. Claimants presented the following witnesses by declaration, Igor Barsky, Robert Barsky, and Nate Pollock.  Igor Barsky and Robert Barsky also appeared and testified in person. Claimants presented Exhibits 1-5, 8-16, 58, 72, 76, 78, 81, 90-95, 97, 99, 100-110, and 113,  which were admitted.

Pursuant to the Parties' arbitration agreements, Claimants are entitled to a default judgment Award. This Award is also based, in the alternative, upon the evidence presented and the Arbitrator's application of the law to the evidence, as set forth herein.

An Interim Award was issued on September 1, 2023. Neither party submitted any corrections or additions.

## II.    FACTS

This matter arises out of: (1) a written/executed Area Development Agreement between Cookie Plug Group LLC LLC (the predecessor of BEI Brands LLC) ("Cookie Plug") which includes an "Addendum to Area Development and Franchise Agreement" ("ADA"), and IBRB Hospitality Group LLC ("IBRB"); and (2) an implied-in-fact Franchise Agreement between Cookie Plug 1 Northfield LLC ("Northfield") ("Franchise Agreement"). The ADA was executed by the Parties on March 25, 2022, and Claimants contend that the Franchise Agreement arose on that same day and continued thereafter as evidenced by the conduct of the Parties and the Addendum to the ADA.

### A.    **Agreements between the Parties**.

Cookie Plug and IBRB entered into an Area Development Agreement ("ADA") with an Effective Date of March 25, 2022. The ADA included an attached "Addendum to Area Development and Franchise Agreement" ("Addendum") which the Parties also executed on March 25, 2022.

The ADA provides at p. 1:
> Franchisor is the franchisor of THE COOKIE PLUG franchise system. Franchisee (or its affiliated entity) is concurrently executing a Franchise Agreement with Franchisor, under the terms of which Franchisee is being granted a right to open and operate THE COOKIE PLUG franchised business at a retail outlet location that Franchisor has consented to ("Outlet"), providing "THE COOKIE PLUG Products" (as defined in the Franchise Agreement) to retail customers under THE COOKIE PLUG trademarks and in accordance with Franchisor's business format.

On March 22, 2022, prior to the execution of any agreements, Igor Barsky sent an email to Chris Wyland, then Chief Development Officer of Cookie Plug, stating:

Hi Chris,

Couple of things. In your email you included an ADA, addendum to ADA and Franchise agreement and the invoice, but no Franchise agreement. . . . .

On March 22, 2022, Chris Wyland responded:

A copy of the Franchise Agreement is already included in the Franchise Disclosure Document that was previously sent. We don't send it with the ADA because you don't execute it at that time. Attached is another copy.

The Franchise Agreement attached to Wyland's email was a generic franchise agreement with none of the blanks filled so as to personalized it for IBRB or to make it ready for signature

("Franchise Agreement").

After executing the ADA and Addendum, Cookie Plug 1 Northfield LLC ("Northfield"), an affiliate of IBRB, leased a retail space in which it would operate the Cookie Plug franchised business. Northfield built out the location, ordered product, underwent training with Cookie Plug, and allowed Cookie Plug staff to enter the property on the opening day to take photographs. On December 17, 2022, Northfield opened its Cookie Plug location at 8302 E. Northfield Blvd, Suite 1570, Denver, CO 80238 ("Northfield Location"). Erik Martinez, Chief Operating Officer of Cookie Plug,  had given his approval for the opening and operation of the Northfield Location.

However, on December 16, 2022, Erik Martinez, had sent an email to Igor Barsky:

. . . Being that the store is not to standard, we are pulling all social media ads, and my staff will not be available to support the opening. Any future support will be billed at the standard rate. Good luck on your opening and operations.

It was Claimants' understanding that as to the Northfield Location, the Parties were operating under the terms included in the Franchise Agreement that was attached to the FDD and re-sent to Igor Barsky by Chris Wyland on March 21, 2022 via email, as amended by the Addendum to Area Development Agreement and Franchise Agreement executed by the Parties on March 25, 2022, even though the Franchise Agreement had not been formally executed.

Northfield operated the Northfield Location under the terms of the implied-in-fact Franchise Agreement, including but not limited to paying Royalties and Marketing Fees to Cookie Plug, until March 31, 2023. On March 30, 2023, Northfield it received a communication from Erik Martinez Cookie Plug advising that Northfield's permission to use the Cookie Plug Name, Marks, System, Proprietary Products/Merchandise Software, was being withdrawn, effective April 1, 2023. System, and that Cookie Plug was returning the Royalties and Marketing Fees Northfield had paid. No evidence was introduced that Cookie Plug did in fact return the Royalties and Marketing Fees Northfield had paid.

The Development Schedule in the ADA calls for stores 1 and 2 to be opened by April 1, 2023, and the remainder of the stores were to be opened thereafter, with the last store to be opened by April 1, 2025. In the Addendum Area Development and Franchise Agreement (3/25/2022), Cookie Plug agreed "to extend all times to secure leases, identify locations, and open to 365 days." (Addendum, II.b.) Consequently, IBRB had until April 1, 2024, to open its second location and until April 1, 2026, to open its last location. As such the Parties expected that the ADA would continue through at least April 1, 2026, and perhaps longer given other provisions in the ADA and the Addendum.

The Franchise Agreement provided at Section 5.1 that "the initial term of this Agreement (applicable solely to the outlet franchised hereunder) commences on the Effective Date and expires on the 10th anniversary of the Opening Date, unless sooner terminated pursuant to the provision of this Agreement. In the Addendum to Area Development Agreement and Franchise Agreement,

the Parties agreed:

> Section 5.1 – Franchisor agrees that all Franchise Agreement will continue in perpetuity as long as all other aspects of franchisee performance listed in the Franchise and Development Agreements are met.
> . . . .
> Further the Parties agreed to delete Sections 5.2 and 5.3 of the Franchise Agreement, dealing with renewal and month to month extension pending renewal, in their entirety.

The Agreement further provided that the Franchise Agreement would continue unless it was terminated for breach thereof by either party. Sec. 13.1(a).

### B.    Cookie Plug Franchise Disclosure Document

Claimants were given the Cookie Plug Franchise Disclosure Document ("FDD"), Issuance Date 2/20/2022. This Franchise Disclosure Document tracks the categories required of franchisors by the Federal Franchise Rule, 16 C.F.R. Part 436, *et seq.* ("Franchise Rule"). The Franchise Rule requires a franchisor to provide prospective franchisees with a complete and accurate basic disclosure document containing twenty categories of information.

In Item 2: Business Experience, Cookie Plug's FDD disclosed:

> Chris Wyland, Chief Development Officer
> Mr. Wyland was named our Chief Development Officer in February 2022. Mr. Wyland also serves as Chief Development Officer of Roll Em Up Franchise Group LLC. He has also served as President and Chief Executive Officer of King Consulting Group, LLC in Las Vegas, Nevada since May 2018. From February 2011 to May 2018, Mr. Wyland served as President and Chief Executive Officer at Nosh Franchise Group in Las Vegas, Nevada. Mr. Wyland also serves as Chief Development Officer for Bomb AF Brands, LLC.

In  Item 3: Litigation, Respondent stated: "No litigation is required to be disclosed in this Item."

Subsequent to the Respondent withdrawing the right to operate as a franchisee, Claimants retained counsel and discovered that cookie Plug had failed to disclose material information required to be disclosed about Chris Wyland, Chief Development Officer, including litigation and administrative actions relating to franchises, and his business experience.

Specifically, Cookie Plug failed to disclose litigation and an administrative action in Washington, Utah and Arizona.

In the Washington State litigation, brought by the State of Washington, Department of

Financial Institutions, Securities Division, Wayland was named as founder, CEO, and managing member of Grow Healthy Vending. The Final Order issued by the Securities Administrator, ordered as follows:

> Franchise Group LLC; Chris Wyland; and their agents and employees each shall cease and desist from offering or selling business opportunities in violation of RCW 19.110.050, the registration section of the Business Opportunity Fraud Act of the state of Washington.

> IT IS HEREBY ORDERED that Respondents, Grow Healthy Vending, LLC f/k/a Grow Franchise Group LLC; Chris Wyland; and their agents and employees each shall cease and desist from violating RCW 19.110.070, the disclosure document section of the Business Opportunity Fraud Act of the state of Washington.

> IT IS FURTHER ORDERED that Respondents, Grow Healthy Vending, LLC f/k/a Grow Franchise Group LLC; Chris Wyland; and their agents and employees each shall cease and desist from violating RCW 19.110.110, the contract section of the Business Opportunity Fraud Act of the state of Washington.

> IT IS FURTHER ORDERED that Respondents, Grow Healthy Vending, LLC f/k/a Grow Franchise Group LLC; Chris Wyland; and their agents and employees each shall cease and desist from violating RCW 19.110.120, the anti-fraud section of the Business Opportunity Fraud Act of the state of Washington.

In the Utah litigation, *1.800.Vending V. Chris Wyland; Grow Franchise Group, LLC; Sprout Healthy Vending, LLC; Grow Healthy Incorporated, and Does 1-50,* (D.Utah 2017*), the Court entered a Final Judgment and Permanent Injunction against Chris Wyland, Grow Franchise Group, LLC, Sprout Healthy Vending, LLC and Grow Healthy Incorporated. Under the Final Judgment and Permanent Injunction, Chris Wyland and others were ordered to pay 1.800 Vending $250,000, with post judgment interest; were restrained from use in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of (a) their own goods, services, or commercial activities or (b) the 1.800 Parties' goods, services, or commercial activities. Chris Wyland and others were also restrained from making any false or misleading representations of fact that disparage in any manner whatsoever the 1.800 Parties or their goods, services, business, officers, directors, employees, and/or distributors.

In the Arizona litigation, *Angel Stephens v. Grow Franchise Group, LLC; Grow Healthy Vending, LLC; Christopher Wyland, Dawn Wyland and Alexis Wyland* (Superior Court, Pima County, Arizona), the Verified Complaint alleged causes of action for Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Fraud in the Inducement, Unjust Enrichment, and Conversion, in connection with the sale and distribution of a vending machine business/vending machines. On or about September 18, 2018, the court entered a default judgment, and considered all factual allegations as admitted by Defendants as a result of their default. Judgment was entered in favor of Plaintiff and against all Defendants in the amount of $21,885.00 plus interest at 10% per annum from June 23, 2017, and costs in the amount of $493.84 plus interest at 6% interest.

Respondent also failed to disclose Chris Wyland's business experience, including his principal positions and employers during the past five years, including each position's starting date, ending date, and location. Cookie Plug did not disclose that Wyland was a principal of and/or working for Grow Healthy Vending through February 2018, the company named in the above litigation.

The Franchise Disclosure Document Cookie Plug provided to Claimants also sets forth certain Financial Performance Representations at Item 19.

The Item 19 Disclosure in the FDD provided to IBRB states:
. . . The representation made below is an historic financial performance representation of a subset of the Cookie Plug Group locations that operated continuously through all of 2021. The following data represents the average, high and low 2021 calendar year financial data for these The Cookie Plug Group locations.

| . . . 2021 Calendar Year | Average | High | Low |
|---|---|---|---|
| Total Revenue | $702,329.05 | $826,092.73 | $507,158.46 |
| Gross Profit | $512,619.68 | $597,271.23 | $373,382.62 |
| Net Profit | $273,860.80 | $333,923.87 | $148,505.18 |

Claimants contend that this disclosure is deficient because it does not comply with the more specific information required to be provided by law (16 C.F.R. 436.5(s). In addition, Claimants presented evidence that Mr. Wyland made financial disclosures outside of the FDD, in emails that contained different financial representations than those contained in the FDD.

Igor Barsky testified that he relied on the representations in the FDD, minus the omissions that should have been made with respect to the financial performance representations in the FDD, the financial disclosures outside of the FDD, the Business Experience and Litigation History of Chris Wyland, having no knowledge that the FDD did not disclose all of the required information. As a direct result of that reliance, Igor Barsky testified, he executed the ADA and Addendum and undertook to open and operate the Northfield Location.

### III.    ANALYSIS

Claimants allege Fraud by Omission (related to the sale of the ADA and the Franchise Agreement); Violation of the Colorado Consumer Protection Act (related to the sale of the ADA and the Franchise Agreement); and Breach of Contract (re: wrongful termination of both the ADA and the Franchise Agreement).

A.      **Fraud By Omission**

Claimants allege that they were fraudulently induced to enter into the ADA and Franchise Agreement as a result of Cookie Plug's violations of the Federal Franchise Rule (16 C.F.R. 436.1, et seq.) because Cookie Plug failed to: (1) provide the required disclosures under the Federal Franchise Rule with respect to the Litigation History of Chris Wyland under Item 3 in the FDD; (2) failed to provide complete disclosures in the financial performance representations within the FDD, and (3) provided illegal financial performance representations outside of the FDD without including the required disclosures related thereto in the FDD.

To prove a claim for fraudulent concealment, a claimant must demonstrate that: 1) the respondent failed to disclose a past or present fact that he or she had a duty to disclose; 2) with intent to induce the claimant to take a course of action he or she would not otherwise have taken; and 3) that claimant justifiably relied on the omission. *Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo.App.2002) (*citing Mallon Oil Co. v. Bowen/Edwards Assocs., Inc*., 965 P.2d 105 (Colo.1998).

As set forth above, Respondent failed to disclose Wyland's litigation history, failed to fully disclose Wyland's business experience and failed to fully disclose Cookie Plug's financial performance.

While the Federal Franchise Rule does not provide for a private right of action, it does provide requirements for franchisors, and thus guidance in determining a franchisor's duty to disclose in a Franchise Disclosure Document.

The Federal Franchise Rule, at 16 C.F.R. § 436.2, requires that the franchisor's principal officers, among others, "state his or her principal positions and employers during the past five years, including each position's starting date, ending date, and location." 16 CFR § 436.5. With regard to litigation, the Federal Franchise Rule requires executives to disclose not only pending litigation, but also whether he has in the 10-year period preceding the disclosure document's issuance date, been "held liable in a civil action involving an alleged violation of a franchise, antitrust, or securities law, or involving allegations of fraud, unfair or deceptive practices, or comparable allegations…and must take action adverse to its interests . . ." or "is subject to a currently effective injunctive or restrictive order or decree resulting from a pending or concluded action brought by a public agency and relating to the franchise or to a Federal, State, or Canadian franchise, securities, antitrust, trade regulation, or trade practice law."

In addition, the Federal Franchise Rule requires that if a franchisor is going to make financial performance representations to a prospective franchisee, the franchisor must make certain specific disclosures. 16 C.F.R. § 436.5(s).

Claimants draw the Arbitrator's attention to *Rodopoulos v. Sam Piki Enterprises, Inc.* (Ala. 1990) 570 So.2d 661, *as modified on denial of reh'g* (Nov. 21, 1990) ("*Rodopoulos*"), in which the Alabama Supreme Court held that a violation of the Federal Franchise Rule, 16 C.F.R. 436.1, et seq., can form the basis of a cause of action based in fraud. The Court held that the trial court correctly allowed the plaintiffs to amend the complaint to allege the duty owed by the franchisor to the plaintiffs under the Federal Franchise Rule, and correctly permitted the jury to consider the Federal Franchise Rule and regulations in determining the duty owed by defendants as setting a standard of conduct in regard to the plaintiff's fraud claims. The Court drew an analogy to the admissibility of OSHA standards as a standard of care to be followed in a negligence case, which had been accepted in past cases, and held that "FTC regulations are admissible in this fraud case with regard to the defendants' duty to disclose." *Rodopoulous, supra*, 570 So.2d at 665.

The Arbitrator finds this reasoning persuasive. Respondent was aware of the Federal Franchise Rule for disclosure and used its form for the Franchise Disclosure document provided to Claimants. Respondent had a duty to disclose Mr. Wyland's litigation history and business experience, and cookie Plug's accurate financial performance, and breached that duty. The Arbitrator find that based upon Respondent's experience and use of the Federal Franchise Rule's disclosure form, the withholding of required disclosures regarding was intentional and was for the purpose of inducing Claimants to take a course of action they would not otherwise have taken; and Claimants justifiably relied on the omission. As such, Claimants were fraudulently induced to enter into the ADA and Franchise Agreement.

As a result of Cookie Plug's fraudulent conduct, Claimant IBRB suffered a loss of the $150,000 Franchise Fee it paid to Cookie Plug under the ADA. Pursuant to the ADA, IBRB was to pay Cookie Plug a $15,000 Franchise Fee for each of the ten (10) locations. On March 18, 2022, Cookie Plug sent to IBRB an invoice in the amount of $150,000, (10 x $15,000 = $150,000), with a due date of March 21, 2022. On March 25, 2022, IBRB sent to Cookie Plug the sum of $150,000 in payment on the above-referenced invoice. The testimony and evidence established that IBRB would not have expended these sums or executed the ADA had it known of the material facts that Cookie Plug failed to disclose.

Claimants are entitled to an award of damages for fraud in the sum of $150,000 to IBRB, and $73,026.57 to Northfield.

## B.    Violation of the Colorado Consumer Protection Act

The Federal Franchise Rule, at 16 C.F.R. § 436.2, declares that it is an unfair or deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act for a franchisor, in connection with the offer or sale of a franchise to fail to provide to a franchisee prospect an FDD

that is in compliance with the disclosure requirements under 16 C.F.R. § 436.5 at least 14 calendar-days before the prospective franchisee signs a binding agreement with, or makes any payment to, the franchisor or an affiliate in connection with the proposed franchise sale. See, 16 C.F.R. § 436.2. A violation of the provisions of 16 CFR 436.1 et seq. is actionable as an unfair and deceptive trade practice under the Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101).

A private cause of action under the Colorado Consumer Protection Act ("CCPA") requires:
(1) that the defendant engaged in an unfair or deceptive trade practice;
(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
(4) that the plaintiff suffered injury in fact to a legally protected interest; and
(5) that the challenged practice caused the plaintiff's injury.
*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003).

The CCPA should be liberally construed to serve its broad purpose and scope. *See Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998).

As set forth above, Cookie Plug engaged in an unfair or deceptive trade practice through its multiple violations of 16 C.F.R. 436.1, *et seq*., and its misrepresentations in the FDD provided to Claimants, in the course of Cookie Plug's business. Therefore, the first two elements of a violation of the Consumer Protection Act are satisfied.

Claimants offered evidence of the misrepresentations in their FDD, and identical misrepresentations in a FDD given to another franchisee, FMP Ventures, Inc. ("FMP") under a Franchise Agreement dated May 11, 2022. In addition, claimants offered evidence from public sources and social media, that Respondent has numerous franchises.

While Claimants have shown evidence that Respondent has numerous franchises, and that Respondent submitted the same misrepresentations and omissions in the FDD used to sign up another franchisee, FMP Ventures, Claimants have not shown that the same misrepresentations were made to a sufficient number of others to satisfy the public impact element. While it seems plausible that the same FDD was used, given the evidence of its use with FMP in February 2022, inference is not sufficient to meet the evidentiary burden. While a claim may proceed at the pleading stage based upon allegations of misrepresentations impacting the public, *see, e.g*., *Overturf v. Rocky Mt. Chocolate Factory, Inc.,* 2009 U.S.Dist LEXIS 140942, the authorities require either evidence that the practice significantly impacted the public, *Hall v. Walter* (1998) 969 P.2d 224, 234, such as a public solicitation sent or available to a large number of persons, or evidence that the public was impacted or could have been impacted, to prove the public impact

element. *Bonanno v. The Quizno's Franchise Co. LLC,* 2008 U.S. Dist. Lexis 21678, 2008 WL 638367 *D. Colo. 3/5/08), (more than 3000 franchises impacted).

Claimants have not met their burden of proof for the public impact element. (Pursuant to the arbitration agreements, they are entitled to a default judgment award, due to the failure of Respondent to participate. Section 7.2(c) and Section 14.2(c))

### C.    <u>Breach of Contract</u> – <u>Repudiation of Contract - Wrongful Termination of Area Development Agreement</u>

The Addendum extended the opening date of the second location from April 1, 2023, through April 1, 2024. On or about March 30, - April 1, 2023, Cookie Plug and Chris Wyland, then CEO of Cookie Plug, sent to IBRB a Notice of Termination of Cookie Plug Area Development Agreement. In this notice, Mr. Wyland writes:

> . . . The Development Schedule Attached to the ADA as Exhibit 1 required you to open two Cookie Plug outlets no later than April 1, 2023.
> As of todays (sic) date, April 1st 2023, you have failed to meet the Development Schedule as required by Section 2.1 of the ADA. Please allow this letter to serve as notice to you of The Cookie Plug Group, LLC's election to exercise its rights persuant (sic) to Section 6.1 of the ADA and to terminate the Development Agreement on May 1st, 2023 if you have not cured the default by such date.

The Addendum to the ADA extended the opening date of the second location (and all other locations) by at least 365 days. Given the 365-day extension in the Addendum, IBRB had until at least April 1, 2024, to open the second location, and the notice of termination was wrongful.

As a result of the wrongful termination of the ADA by Cookie Plug, IBRB or its affiliates were not able to open the remaining nine franchised locations under the ADA or continue to operate the one location that had been opened. IBRB paid $15,000 for each of the ten locations, for a total of $150,000. As such, IBRB has suffered damages in the amount of $150,000, as a result of Cookie Plug wrongfully terminating the ADA on April 1, 2024, effective May 1, 2024. Had this breach of contract not occurred, IBRB or its affiliates would have had an opportunity to recoup its $150,000 investment either by building out the remaining franchised locations or transferring (selling) the ADA to another party under Section 4.2 of the ADA. (See, Exhibit 2, Sec. 4.2.)

Based on the foregoing, IBRB is entitled to a damages award of $150,000 for the damages it sustained as a result of Cookie Plug's breach of contract via wrongful termination / repudiation of the ADA. It is also entitled, as the prevailing party, to an award of attorneys' fees pursuant to Section 7.4 of the ADA.

### D.     Breach of Contract – Repudiation of Contract - Wrongful Termination of The Franchise Agreement

On March 30, 2023, Erik Martinez on behalf of Cookie Plug sent an email to Igor Barsky and Robert Barsky, entitled "Reminder Final Notice" informing them that they would no longer "longer be authorized to use the Cookie Plug Name, Marks, Systems, Proprietary Products/Merchandize, Software, etc. effective April 1, 2023.

Based on the above evidence, the Arbitrator finds that Erik Martinez, on behalf of Cookie Plug, terminated or anticipatorily repudiated the implied-in-fact Franchise Agreement the implied-in-fact Franchise Agreement by declaring that Cookie Plug was withdrawing the rights the Parties understood were granted under the Franchise Agreement.

The evidence established that the damages sustained by Claimants include: (a) Loss of Franchise Fee ($150,000); (b) Net Loss on Operations ($26,599.60); (c) Loss on Equipment Purchases ($21,916.87); and (d) Loss on Leasehold Improvements ($24,510.10). The loss of Franchise Fee ($150,000) is awarded to IBRB for wrongful termination of the ADA, the entity that paid the fee under the ADA. The remainder of the damages, $73,026.57, are damages sustained by Northfield in building out and operating the franchised business under the implied-in-fact Franchise Agreement.

### E.     Declaratory Relief and Rescission of Franchise Agreement and ADA.

Claimants seek declaratory relief terminating or rescinding the implied-in-fact Franchise Agreement between the Parties, determining that Cookie Plug wrongfully terminated the ADA, and that neither party owes any further obligations to the other under the implied-in-fac Franchise Agreement or the ADA.

The Arbitrator finds that the implied-in-fact Franchise Agreement existed between the Parties. After disputes arose between the Parties, and over a year after the Parties executed the ADA and the Addendum to the Area Development and Franchise Agreement, Cookie Plug, on March 30, 2023, issued a "Final Notice" to Igor Barsky and Robert Barsky and Cookie Plug refused to recognize the implied-in-fact contract established by the Parties' conduct, while at the same time, via the above referenced Final Notice, it revoked the authorization granted to Northfield under the implied-in-fact franchise agreement to "use the Cookie Plug Name, Marks, Systems, Proprietary Products/Merchandize, Software, etc. effective April 1, 2023." The Arbitrator exercises her discretion to declare the existence of an oral contract, the terms of that contract, and terminate the controversy. *Zab, Inc. v. Berenergy Corp.* (Colo. 2006) 136 P.3d 252, 253 ("*Zab*") ("we hold that a trial court may exercise its discretion to declare the existence of an oral contract

and, if one exists, the terms of that contract, where such relief would 'terminate the controversy or remove an uncertainty.'")

As set forth above, the Arbitrator also found that Cookie Plug wrongfully terminated the ADA, and finds that Claimants have no further duties, obligations, or debts owing to Cookie Plug under the ADA.

F.     <u>Attorney Fees and Costs</u>

Section 14.4 of the Franchise Agreement, and Section 7.4 of the Area Development Agreement provide that the prevailing party in any arbitration is entitled to recover from the losing party "reasonable legal fees (and incurred costs of the prevailing party's counsel) and all other "Expenses" (as defined in section 16.2(e) below) . . . (including without limitation arbitration or court filing fees, expert and other witness fees, discovery expenses and compensation payable to the arbitrator). . . ." (Section 14.4); and "reasonable legal fees (and incurred costs of the prevailing party's counsel) and all other reasonable expenses incurred by the prevailing party in bringing or defending such arbitration, action or proceeding or enforcing any resulting award or judgment (including without limitation arbitration or court filing fees, expert and other witness fees, discovery expenses and compensation payable to the arbitrator), whether incurred prior to or in preparation for or in contemplation of the filing of the action or thereafter. The prevailing party will be determined by the arbitrator or court." (Section 7.4)

Claimants are the prevailing party.

Claimants are seeking attorney fees in the total amount of $36,644.50, which includes fees for the lead attorney, the legal assistant, and the paralegal. In addition, Claimants seek reimbursements for JAMS fees and arbitrator fees in the amount of $19,031.17. Claimants submitted a detailed declaration of attorney Mario L. Herman on September 1, 2023, supported by invoices documenting attorney fees, and expenses. The Arbitrator finds that the billing rates of the attorney, legal assistant, and paralegal are reasonable, as are the documented expenses.

IV.     **CONCLUSION**

1. Claimants Cookie Plug 1 Northfield LLC, and IBRB Hospitality Group LLC, are entitled to an award of damages for fraud against Respondents The Cookie Plug Group, LLC; BIE Brands, formerly known as The Cookie Plug Group, LLC LLC; and The Cookie Plug LLC, jointly and severally, in the sum of $150,000 to IBRB Hospitality Group LLC, and $73,026.57 to Cookie Plug 1 Northfield LLC.

2. Claimants Cookie Plug 1 Northfield LLC, and IBRB Hospitality Group LLC,

are entitled to an award of damages for breach of contract against Respondents The Cookie Plug Group, LLC; BIE Brands, formerly known as The Cookie Plug Group, LLC LLC; and The Cookie Plug LLC, jointly and severally, in the sum of $150,000 to IBRB Hospitality Group LLC, and $73,026.57 to Cookie Plug 1 Northfield LLC.

     3. Claimants Cookie Plug 1 Northfield LLC, and IBRB Hospitality Group LLC, are entitled to a default judgment award of damages pursuant to Section 14.2(b) of The Cookie Plug, LLC Franchise Agreement ("Franchise Agreement"), and Section 7.2(b) of The Cookie Plug Area Development Agreement, against Respondents The Cookie Plug Group, LLC; BIE Brands, formerly known as The Cookie Plug Group, LLC LLC; and The Cookie Plug LLC, jointly and severally, in the sum of $150,000 to IBRB Hospitality Group LLC, and $73,026.57 to Cookie Plug 1 Northfield LLC.

     4. For clarity, Claimants Cookie Plug 1 Northfield LLC, and IBRB Hospitality Group LLC, are entitled to one award of the above damages in the total sum of $223,026.57, $150,000 to IBRB Hospitality Group LLC, and $73,026.57 to Cookie Plug 1 Northfield LLC, against Respondents The Cookie Plug Group, LLC; BIE Brands, formerly known as The Cookie Plug Group, LLC LLC; and The Cookie Plug LLC, jointly and severally, rather than duplicative damages for the fraud and breach of contract claims, and the default award.

     5. Claimants' claim for violation of the Colorado Consumer Protection Act was not established because Claimants did not satisfy the public interest element.

     6. Claimants are awarded attorney fees in the total amount of $36,644.50, and expenses in the amount of $19,031.17, for a total of $55,695.67

     7. Claimants have established their right to declarations of rights as follows:

     a. An implied-in-fact contract existed between Cookie Plug and Northfield, the terms of which were set forth in the Franchise Agreement attached to the FDD provided to Igor Barsky prior to the execution of the ADA and the Addendum to the Area Development Agreement and Franchise Agreement, and again provided to Igor Barsky by Chris Wyland on March 21, 2022 via email.

     b. Cookie Plug terminated the implied-in-fact contract via the March 30, 2023, Final Notice written by Erik Martinez on behalf of Cookie Plug. Said termination was wrongful, and Northfield is entitled to damages sustained.

     c. Northfield, IBRB, Robert Barsky and Igor Barsky have no further duties, obligations, or debts owing to Cookie Plug under the implied-in-fact Franchise Agreement.

     d. Cookie Plug wrongfully terminated the ADA.

e. IBRB, Robert Barsky, and Igor Barsky have no further duties, obligations, or debts owing to Cookie Plug under the ADA.

Dated: September 25, 2023

_Barbara A Reeves_

Barbara A. Reeves
Arbitrator